Mr. Justice Cox
delivered the opinion of the court.
There is certified to this court from the Special Term, a rule on a purchaser at a sale made under a decree of the equity court, to show cause why he should not be required to comply with the terms of the sale to him.
It appears that, upon the application of Clementina Brent, in March, 1883, a commission de lunático inquirendo was issued, by order of the equity court, to inquire into the lunacy of her brother, George Brent. An inquisition was duly had, the lunacy was satisfactorily shown, and a committee appointed.
In October, 1886, the then committee applied for authority to seiba portion of the real estate of the lunatic, on the ground that a large amount was due for his support and maintenance, as well as for taxes on his property; that the property was unimproved and unproductive, and the committee had no means with which to meet the charges in question, and it would be for the best interests of the lunatic himself that the sale be made. The application was sworn to by the committee himself, and fortified by the affidavit of Thomas J. Fisher, real estate agent, as to the expediency of the sale.
The sale was decreed and was made by a trustee appointed *353 for the purpose. The cash payment was made by the purchaser, but he declined to go further, on the advice of his attorney: 1. That this court has no jurisdiction to decree a sale of the real estate of a lunatic; 2. That if it has such jurisdiction at all, it is only properly exercised by a regular proceeding in equity by bill or petition filed by the committee against him, and service on him by summons or publication ; and 3. That no sale could be decreed on ex parte affidavits, as in this case, but proof of the propriety of the sale must first be made or taken before an examiner and returned regularly to the court.
We proceed, then, to inquire into the powers of the court on this subject.
There is no direct legislation, in this connection, by Congress, but by section 92 of the Bevised Statutes District of Columbia, it is enacted that “ the laws of the State of Maryland, not inconsistent with this title, as the same existed on the 27th day of February, 1801, except as since modified or repealed by Congress, or by authority thereof, or irntil so modified or repealed, continue in force within the District.”
We are thus referred to the legislation of Maryland in force when Congress assumed jurisdiction over the District, to ascertain the powers of this court over the estates of lunatics.
The first act of assembly of Maryland to be referred to is that of 1785, ch. 72, sec. 6, which enacts that the chancellor shall have full power and authority in all cases to superintend, direct and govern the affairs and concerns of persons who may be lunatics or idiots, both as to the care of their persons and management of their estates; and may appoint a committee, trustee or trustees, for such persons and may make such orders and decrees, respecting their persons and estates, as to him may seem proper.
It further authorizes him, on the application of a creditor and on being satisfied of the justice of the demand, and that it will be for the advantage of the estate, to sell: first, the *354 personalty, and, if that be insufficient, so much of the realty as may be sufficient to discharge the debt.
Another act of 1*790 authorizes the conversion of the principal of the personal estate into money, for reinvestment, when it shall appear to the chancellor to be beneficial to the idiot or lunatic, &c.
Then came the act of 1800, ch. 6*7, which recites that the chancellor is confined, in making provision for the support of idiots, lunatics and persons non compos menti<••, to the annual proceeds of the estate, and it appears reasonable that the power should be increased, and enacts that the chancellor shall have full power and authority in all cases where trustees shall or may be appointed under authority of the Chancery Court for the management of the estates and persons of idiots, lunatics, &c., to order and direct the property of such idiot, &c., or so much thereof as he may judge necessary for the support of such idiot, &c., or for the payment of all reasonable and just expenses which such trustee or trustees may have incurred, to be sold upon such terms as he may think proper, and to appoint a trustee or trustees for the purpose of effecting such sale or sales, and the money arising therefrom to be applied to the discharge of such expenses.
Section S allows the entire property to be sold, though not necessary for support of the lunatic, if it will not admit of division without prejudice, or it shall be so situated or of such a nature as to render it advisible and beneficial to such person, in the opinion of the chancellor, to sell the whole or a greater part than may be necessary for the immediate support of such person.
Section 4 requires all sales to be confirmed by the chancellor before any conveyance of the property shall be made.
Section 5 enacts that the principal sum arising from the sale, and not applied during the lunatic's life to his use and maintenance, shall, on his death, belong to such persons as would have been entitled to the propoerty if it had not been sold.
It is very clear that the provisions of sections 3, 4 and 5, *355 contemplate a sale of real estate, and are hardly applicable ot anything else. They are entirely conclusive with us as to the power to sell the realty of the lunatic.
The law is in force in this District and is to be administered by this court through its equity powers.
It maybe further remaked that sec. 952, Revised Statutes District of Columbia, seems to assume the application of the law to real estate, hy conferring on a non-resident committee of a lunatice the same power to release and convey lands of the lunatic that he would have if his authority had been derived from the proper tribunals of the District.
With regard to the form of proceeding and the kind of evidence upon which the courtis to act, the statute is silent.
It is to be remembered that the lunatic’s estate is already Under the jurisdiction of the court, hy the appointment of a committee, for the purpose of passing any order or decree which the statute authorizes. It may then pass such orders and decrees as to it may seem proper. This is not like the case of the sale of infants’ estates which are not placed under the government and management of the chancellor, but in regard to which he only acquired jurisdiction by formal equity proceedings.
The practice in Maryland under these and similar acts is thus stated in Alexander’s Oh. Pr., p. 23 R
“ The proceeding is by petition, either of the creditor or trustee, with which should he exhibited some prima facie evidence of the existence of the debt and of the necessity of the sale. If the petition is filed by the trustee, it has been usual to pass the order-for the sale forthwith. If the petition Is filed by the creditor, notice is directed to be given to the trustee, who may resist the application by answer, and upon the issue joined in this manner, depositions may be taken in the usual manner.”
It will thus he seen that the proceedings may be informal and almost summary.
The whole is within the discretion of the court.
We are of opinion that the petition in this case by the 'committee, presented the very case in which a sale of the *356 realty was authorized, and that the proceeding is free from any irregularity affecting the validity of the sale and the transfer of the lunatic’s title to the purchaser, and that the latter ought, therefore, to be required to comply with the terms of the sale.
The case is remanded to the Special Term for further proceedings in conformity with this opinion.